**In re Ollie BRYANT, Appellant.**

Nos. 86–1528, 87–354.

District of Columbia Court of Appeals.

Argued Feb. 29, 1988.
Decided March 25, 1988.[1]

Donna L. Wulkan, appointed by the court, with whom John Andrew Mantz, pro hac vice, was on the brief, for appellant.

Alan L. Cohen, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Ann O'Regan Keary, Deputy Corp. Counsel, were on the brief, for appellee. Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., were on the brief, for appellee.

Donald B. Verrilli, Jr., with whom Donald N. Bersoff was on the brief, for amicus curiae, American Psychological Ass'n.

Arlene S. Kanter and Susan Stefan filed a brief on behalf of amicus curiae, Mental Health Law Project.

Armin U. Kuder filed a brief on behalf of amicus curiae, Washington Psychiatric Society.

Before PRYOR, Chief Judge, and FERREN and STEADMAN, Associate Judges.

---

1. The decision in this case was originally released as a Memorandum Opinion and Judgment. The court has granted appellee's request for publication.

**PER CURIAM:**

This is a consolidated appeal from two orders entered by judges of the Mental Health Branch, Family Division, of the Superior Court. Specifically, appellant, Ollie Bryant, appeals from Judge Urbina's denial of her motion for a protective order seeking that St. Elizabeths Hospital be prohibited from administering psychotropic medication to her against her will, and from Judge Hess' denial of her motion to show cause why the Superintendent of St. Elizabeths Hospital and her attending physician should not be held in civil contempt for failing to monitor her continuously for any medication-related side effects. Appellant raises several issues on appeal. Given our resolution of the matter, we do not reach or decide all of the contentions.[2] We do, however, consider appellant's assertion that the trial judge misapplied the substituted judgment criteria, as set forth in *In re Boyd,* 403 A.2d 744 (D.C.1979), and rendered findings unsupported by the record. It is also urged that the trial court abused its discretion in denying appellant's motion to show cause.

We conclude that the trial court's determination that appellant would have chosen to accept psychotropic medication if competent is supported by the record and is consistent with our decision in *Boyd.* Because we find no merit in any of the other contentions raised, we affirm the denials of both motions appealed from in this matter.

I

On December 6, 1985, appellant, Ollie Bryant, a 68 year old woman, was involuntarily admitted to St. Elizabeths Hospital pursuant to an application for emergency hospitalization.[3] D.C.Code § 21–521 (1981). Pursuant to § 21–541, the hospital filed a petition for appellant's involuntary judicial hospitalization, and she remained hospitalized pending judicial resolution of her status under the authority of § 21–528.

During her period of hospitalization, appellant refused the administration of psychotropic medication prescribed for her by the hospital staff. On three occasions— December 12, 1985, February 26, 1986, and March 27, 1986—Phyllis Appel, Medical Director of appellant's hospital division, performed an Independent Administrative Review pursuant to St. Elizabeths Hospital Policy and Procedure Manual, SEH INST 4100.4A (1981), for the purpose of determining the propriety of authorizing the involuntary administration of medication to

---

**2.** On April 9, 1986, appellant received a judicial hearing before Judge Urbina, at which time he determined that she was incompetent to make a treatment decision. In his October 13, 1986, order denying the motion for a protective order and determining that appellant would have chosen to accept psychotropic medication if competent, Judge Urbina noted that because appellant's objections to the medication were based not on first amendment religious grounds, but rather primarily on religious delusions, the application of the substituted judgment criteria, as set forth in *In re Boyd,* 403 A.2d 744 (D.C.1979), was not necessary to resolution of the issue. Although Judge Urbina went on to apply the substituted judgment approach, he was cautious to note that his opinion did not constitute a ruling on the question whether "a committed patient's objection to psychotropic medication requires a judicial determination of competency and 'substituted judgment' when non-religious objections are the basis for a patient's refusal."

We therefore reserve consideration of the following issues since they were neither litigated below nor necessary to the disposition of the motion before Judge Urbina: (1) whether due process requires judicial resolution of the question of a mentally ill patient's competency to make a treatment decision; (2) whether due process requires a judicial hearing prior to the administration of antipsychotic medication to a mentally ill patient who objects to such medication on non-religious grounds; and (3) even if due process does not require a judicial hearing prior to the involuntary administration of antipsychotic medication to a mentally ill patient who objects on non-religious grounds, whether the administrative procedures of St. Elizabeths Hospital governing the right of a mentally ill patient to refuse treatment comport with due process guarantees.

We reject, however, appellant's contention that although incompetent she has a right, based on the common law tort doctrine of informed consent, to refuse involuntary medical treatment. *See id.* at 748 n. 8.

**3.** The record indicates that this was the tenth time appellant had been admitted to St. Elizabeths Hospital, since her first admission in 1957 when she was diagnosed as suffering from schizophrenia. Appellant has a lengthy history of in-patient and out-patient stays at the hospital, and she has a thirty-year documented history of mental illness.

appellant. In each instance, Appel determined that appellant was incompetent to make a treatment decision and granted a request authorizing the medication. Appellant received psychotropic medication from December 12, 1985 to January 12, 1986, from February 26, 1986 to March 26, 1986, and on April 1, 1986.

On February 26, 1986, in accordance with § 21–542, the Commission on Mental Health conducted a hearing on St. Elizabeths' petition and issued a report on February 27, in which it found that appellant was a danger to herself and other persons due to her mental illness, and that hospitalization for an indeterminate period was necessary. Pursuant to § 21–545, a judicial hearing was then scheduled.

On March 11, 1986, counsel for appellant filed a motion for a protective order with the trial court seeking that St. Elizabeths Hospital be prohibited from forcibly medicating appellant without her consent. Bifurcated proceedings on appellant's motion began on April 9, 1986, before Judge Urbina. After receiving lengthy testimony, Judge Urbina found that appellant was refusing medication due to her delusional belief that she was a deity, and concluded that she was incompetent to make a treatment decision. Accordingly, he denied her request for interim relief. On April 16, 1986, however, he *sua sponte* granted a temporary protective order, citing appellant's high risk age and gender group for the development of tardive dyskinesia—a side effect brought on by the administration of psychotropic medication—and the fact that there was no firm indication that she would be a danger to herself or others if not forcibly medicated until the May 20, 1986, scheduled hearing date, at which time a determination was to be made as to the application of the *Boyd* factors to her case.

During hearings held before Judge Urbina on May 20, and May 21, 1986, the court received evidence regarding its exercise of "substituted judgment" to determine what treatment decision appellant would have made if competent.[4] On October 13, 1986,

Judge Urbina issued a memorandum opinion and order in which he found that appellant if competent would have chosen to receive the psychotropic medication; he therefore denied her motion for a protective order. Soon thereafter, the hospital began administering psychotropic medication to appellant.

On January 21, 1987, appellant's counsel filed a motion to show cause why St. Elizabeths Hospital and appellant's attending physician should not be held in civil contempt of Judge Urbina's October 13, 1986, order which stated that appellant should be continuously monitored for ongoing side effects from the medication. On February 2, 1987, Judge Hess denied the motion. This consolidated appeal followed.

## II

■ Appellant contends that the trial court's determination under the substituted judgment criteria, as set forth in *In re Boyd, supra,* that she would have chosen to accept psychotropic medication if competent is unsupported by the record. We disagree.

In *In re Boyd, supra,* we held that when a legally incompetent patient asserts a first amendment right, based on religious grounds, to refuse the administration of psychotropic medication, and the use of such medication is not necessary to save the patient's life, the trial court must utilize a "substituted judgment" analysis in order to determine what treatment choice the patient would have made if competent. 403 A.2d at 750–52. Such an analysis involves the application of the following framework:

> (a) when an individual prior to incompetence, has objected, absolutely, to medical care on religious grounds, (b) the evidence demonstrates a strong adherence to the tenets of that faith, and (c) there is no countervailing evidence of vacillation, the court should conclude that the individual would reject medical treatment. In other, less clear situations, the court should make the putative

---

4. Medical testimony indicated that appellant had been diagnosed as schizophrenic. The hospital had also entertained a diagnosis of a bipolar disorder.

decision by looking at the nature, intensity, and longevity of the patient's objection to medical care, the intrusiveness and side effects of the proposed treatment, and the likelihood of cure or improvement with or without such treatment.

*Id.* at 751 (footnotes and citations omitted). The exercise of "substituted judgment" therefore constitutes an "approach which attempts, however imperfectly, to account for the particular qualities of mind and preference known about the individual before the court." *Id.* If the trial court determines, under the substituted judgment criteria, that a mentally ill incompetent patient would reject administration of psychotropic medication if competent, then it must deny the hospital authority to medicate "unless the government can demonstrate that a particular 'compelling state interest' would justify overriding [the patient's] putative choice." *Id.* at 753.

The first *Boyd* factor emphasizes the nature, intensity, and longevity of the patient's objection to medical care. In the instant case, the evidence at trial showed that appellant had taken psychotropic medication for extensive periods of time in the past, but that she had often objected. The trial court found, however, that her past objections were "based on a delusional belief that she is God and the erroneous belief that she is not mentally ill." Appellant argues that it was improper for the court to presume her incompetent when her incompetency had never been adjudicated, and that the evidence demonstated her "sincere and intense desire to be free from treatment with psychotropic medication for nearly thirty years."

Our review of the record indicates that the trial court did not discount the nature, intensity, and longevity of appellant's past objections to medications based on a finding that she was legally incompetent at the time, but rather that her past objections were the product of her delusional system, a finding in our view supported by the record, despite some conflicting testimony. Consequently, it was proper for the court to assign little weight to the first *Boyd* factor.

As to the second *Boyd* factor, we are satisfied that the trial court carefully considered and evaluated the evidence relating to the intrusiveness and side effects of the proposed treatment. The court recognized that appellant had developed minor side effects from administration of the medication—possibly suggesting the onset of tardive dyskinesia—but found that the medication "would reduce the intensity of her delusions, and would enable her to function more normally and attend to other activities rather than remaining totally absorbed with her delusions."[5] While we recognize the potential intrusiveness of psychotropic medications, *see id.* at 752 n. 13, the evidence in this case supports the trial court's finding that the side effects appellant had experienced were minimal and non-disabling.

Finally, with regard to the third *Boyd* factor, we conclude that there is sufficient evidence on this record to support the trial court's finding that appellant's condition would improve with the medication.[6] Thus, the trial court did not clearly err in finding that "without treatment, Ms. Bryant has no realistic hope of leaving the Hospital and returning to the community."

### III

Appellant also maintains that, in its exercise of substituted judgment, the trial court improperly took into account several factors not contemplated by our decision in *Boyd*. Specifically, appellant argues that the court erred (1) in utilizing an objective standard in applying the *Boyd* analysis; and (2) in considering any evidence intro-

---

5. The evidence at trial supports a finding that with medication appellant is better able to attend to the pursuits of daily living, and that without medication she may engage in behavior dangerous to her well-being.

6. While the court recognized that appellant's psychiatric expert disputed the efficacy of psychotropic drugs in reducing thought disorder in schizophrenics, it found his opinion to be unrepresentative of "the overwhelming majority of psychiatric opinion."

duced by the District in applying the *Boyd* analysis.[7]

While our decision in *Boyd* emphasized the subjective nature of the substituted judgment approach, we were cautious to note that

> inevitably the substituted judgment approach, because of its obvious limitations, will result in a synthesis of (1) factors known to be true about the incompetent and (2) other considerations which necessarily suggest themselves when the court cannot be sure about an incompetent's actual wishes. Thus, in trying to decide what choice the individual would make if competent, the court is not precluded from filling the gaps in its knowledge about the incompetent by taking into account what most persons are likely to do in a similar situation.

*Id.* at 751 (citations omitted). Thus, when actual preferences of an incompetent patient cannot be determined, the trial court is permitted to "act with respect to the preferences as a reasonable, competent person in the incompetent's situation would have...." *Id.* at 750–51 n. 11 (quoting Robertson, *Organ Donations by Incompetents and the Substituted Judgment Doctrine*, 76 COLUM.L.REV. 48, 63 (1976) (quoting J. RAWLS, A THEORY OF JUSTICE 209 (1971))).

Given the foregoing, we conclude that it was not error for the trial court to consider whether a reasonable person in appellant's position would have chosen freedom over hospitalization, since appellant's actual preferences were unknown. For the same reason, it was not error for the court to conclude that psychotropic medication represented appellant's best hope of reintegration into community life.

■ We further reject appellant's claim that it was error for the trial court to include the District's evidence in proceedings designed to determine her substituted judgment. Our decision in *Boyd* suggested no such restriction. On the contrary, medical testimony relevant to the trial court's determination of the weight to be accorded any of the *Boyd* factors is properly admissible. *See Reavis v. United States*, 395 A.2d 75, 78–79 (D.C.1978). And, consequently, the government, as a party to a *Boyd* proceeding, is permitted to introduce such evidence.

## IV

■ Finally, appellant argues that Judge Hess erred in denying her motion to show cause why the Superintendent of St. Elizabeths Hospital and her attending physician should not be held in civil contempt for failing to monitor her continuously for any medication-related side effects, a condition imposed by Judge Urbina in his memorandum opinion and order. In her motion, appellant alleges that she suffered adverse effects from the medication which could have been avoided had the hospital carefully monitored her condition. Appellant thus argues that it was error for the court to refuse to set the matter for an oral hearing so that the factual issues could be developed, and to approve expenditure of government funds so that an expert witness could be hired to testify on the issue of whether the hospital's standard of care fell below that required under the circumstances.

"Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Bolden v. Bolden*, 376 A.2d 430, 432–33 (D.C.1977) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)). Thus, "a judgment of civil contempt is remedial in nature and does not require a finding of intent." *In re Gorfkle*, 444 A.2d 934, 939 n. 3 (D.C.1982) (citing *Bolden v. Bolden, supra*, 376 A.2d at 432–33; *McComb v. Jacksonville Paper Co., supra*, 336 U.S. at 191, 69 S.Ct. at 499). The decision whether to hold a party in civil contempt rests within the sound discretion of the trial court and will be

---

7. Appellant also contends that the trial court improperly considered the interest of the District in discharging her from St. Elizabeths Hospital. We disagree that this occurred, and therefore reject this argument.

reversed on appeal "only upon a clear showing of an abuse of discretion." *Hill v. Bonded Adjustment Association, Inc.,* 398 A.2d 16, 17–18 (D.C.1979).

In the instant case, Judge Hess recognized that appellant had suffered some expected adverse side effects from the medication, and that it was possible that these effects might have been avoided had her doctors monitored her through timely blood tests. He went on to note, however, that the facts alleged by appellant's motion demonstrated that the monitoring conducted by the hospital sufficiently complied with the requirements of Judge Urbina's order. And, in his view, the possibility that other, perhaps more effective means, could have been utilized to accomplish this result did not warrant a finding of civil contempt.

We have reviewed the same motion and conclude that Judge Hess did not abuse his discretion in so ruling. *See Marshall v. Local Union No. 639, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Inc.,* 193 U.S.App.D.C. 143, 149, 593 F.2d 1297, 1303 (1979) ("courts need not impose the contempt sanction for every violation"), *quoted in Hackes v. Hackes,* 446 A.2d 396, 400 n. 6 (D.C.1982).

*Affirmed.*