James A. KAY, Jr., Appellant,

v.

Harold PICK, et al., Defendants.

Appeal of FEDERAL COMMUNICATIONS COM'N, Appellees.

No. 96–CV–1727.

District of Columbia Court of Appeals.

Argued March 11, 1998.
Decided May 21, 1998.

Barry A. Friedman and Scott A. Fenske, Washington, DC, for appellant.

John P. Schnitker and Leonard Schaitman, Washington, DC, with whom Frank W. Hunger, Assistant Attorney General and Mary Lou Leary, Acting United States Attorney at the time the brief was filed, were on the brief for the appellee.

Before KING, REID, and WINFIELD * Associate Judges.

WINFIELD, Associate Judge:

This is a third-party subpoena enforcement (discovery protection) case in which the trial judge granted a motion to quash a subpoena that had been served upon a former employee of the Federal Communications Commission (the "F.C.C."). We conclude that the trial judge did not abuse her discretion in finding that the subject matter of both the documents and the testimony sought by the

---

* Sitting by designation, pursuant to D.C.Code § 11–707(a) (1995).

subpoena is protected by the law enforcement privilege. We affirm.[1]

## FACTUAL SUMMARY

Appellant, is an individual who currently holds more than 150 radio licenses issued by the F.C.C. which he operates in the Los Angeles, California area. After the licenses were issued, the F.C.C. received numerous complaints that appellant operated these licenses improperly. In October 1993, the F.C.C. initiated an investigation into these allegations which resulted in a decision by an administrative law judge to revoke all of appellant's licenses. Appellant appealed administratively and the matter was remanded to the full Commission for reconsideration in May 1998.[2]

Just before the F.C.C. began its investigation in August 1993, appellant filed a civil case in Los Angeles, California ("the California litigation") against defendants Harold and Gerard Pick and Frank DeMarzo, three of his business competitors.[3] The suit seeks damages for alleged acts of slander, intentional interference with economic relationships, unfair business practices, and intentional infliction of emotional distress. Appellant alleged in the California litigation that the defendants falsely accused him of committing serious crimes, including murder, and falsely impugned his business practices. Appellant asserts that the defendants may have made false reports and accusations against him to the F.C.C. and generated the F.C.C. investigation.

During the course of the California litigation, appellant served interrogatories on defendant DeMarzo that included a request for the names, addresses, and telephone numbers of all persons whom DeMarzo claimed had knowledge of his defenses. In response to this interrogatory, DeMarzo provided twenty-eight names of individuals, including four persons associated with the F.C.C. Among these four was Robert Andary who by then was no longer employed at the F.C.C.[4] From May 1992 to May 1995, however, Robert Andary had been Counsel to the Inspector General and Director of Investigations for the Office of the Inspector General at the F.C.C. In this capacity, he participated in the investigation of appellant that is the subject of the pending license revocation hearing.

When appellant received DeMarzo's responses to the interrogatories, he served a subpoena on Andary requesting his deposition and the production of all documents pertaining to, essentially, any and all written, telephonic or oral correspondence and communications between Mr. Andary and the defendants, and any and all third persons that in any way pertained to the appellant in any matter. The Department of Justice on behalf of the F.C.C. objected in a letter dated July 23, 1996, on the grounds that the law enforcement privilege as well as the confidential source, deliberative process and work product privileges protect the proposed testimony. The parties agreed to delay further proceedings until a motion to quash the sub-

1. The law enforcement privilege resolves the dispute in its entirety. Accordingly, we need not decide the applicability of the alternative privileges—deliberative process, confidential source and work product—as asserted by the F.C.C.

2. Initially, the F.C.C. issued an order to show cause why appellant's licenses should not be revoked or canceled, and why appellant should not be ordered to cease and desist violating provisions of the Communications Act of 1934, 47 U.S.C. § 151 ("the Act") and related F.C.C. rules. In May 1996, an administrative hearing was held that resulted in a decision to revoke all of appellant's licenses and to impose a penalty of $75,000 in fines due to "willful and repeated violations of the Act and F.C.C. rules." *In re James A. Kay*, 11 F.C.C. Rcd 6585 (1996). This decision was vacated, however, when appellant appealed administratively to the F.C.C. General Counsel. The General Counsel remanded the case and scheduled it for a hearing before the full Commission. It is this pending license revocation hearing that is scheduled to commence in May or June 1998.

3. For reasons that are not relevant here, only defendant DeMarzo remains in the California litigation.

4. In May 1995, Andary left the F.C.C. and became the Inspector General for the Federal Labor Relations Authority. He returned to the F.C.C., but left again to become the Inspector General of the General Printing Office in November 1997. The interrogatory was dated September 7, 1994. By the time the answer was filed, Mr. Andary was no longer employed with the F.C.C.

poena served on Andary could be filed by the government and resolved by a court.

The motion to quash was filed in the Superior Court, along with a Declaration and Formal Assertion of Privilege of Gary L. Stanford, Associate Bureau Chief of the Wireless Telecommunications Bureau ("WTB") at the F.C.C. In his affidavit, Mr. Stanford attested that (1) appellant's licenses are within the oversight authority of the WTB; (2) he was personally responsible for investigations conducted by the WTB; (3) he was personally familiar with the pending investigation of the appellant, and (4) he was authorized to assert the law enforcement, deliberative process, confidential source and work product privileges on behalf of his agency. Stanford further attested that Robert Andary had been one of several attorneys who had participated in the investigation of appellant. Finally, Mr. Stanford attested that any information that Mr. Andary could give regarding appellant or the defendants was gleaned solely from his participation in the official investigation of appellant. Mr. Stanford declared that Mr. Andary's expected testimony would likely reveal confidential sources in the pending F.C.C. litigation against appellant as well as the F.C.C.'s law enforcement procedures that would compromise the agency's deliberative processes. Mr. Stanford specifically declared that testimony from Mr. Andary would reveal the scope and direction of the F.C.C. investigation of appellant, the evidence amassed to date and the F.C.C.'s investigative strategies. In addition, Mr. Stanford expressed concern that disclosures would enable appellant to identify and intimidate potential witnesses and informants, take corrective action to avoid discovery of new violations, and potentially tamper with evidence.

With respect to the demand by appellant for documents from the F.C.C., Mr. Stanford declared that two documents would be produced, ten documents were publicly available and two others were privileged. Of the claimed privileged documents, Mr. Stanford described one as a witness statement obtained by the F.C.C. during its investigation of the appellant and the other is Mr. Andary's daily business journal. Mr. Stanford claimed that the witness statement was clearly protected inasmuch as it was a confidential source account pertaining entirely to the pending F.C.C. case and not to the California litigation. According to Mr. Stanford, the business log of Mr. Andary either contained notations of personal appointments that were irrelevant to the California case or that memorialized meetings he held with informants and witnesses, or other aspects of the F.C.C. investigation of appellant.

Appellant opposed the motion to quash. He asserted that the California litigation is wholly independent of the F.C.C. investigation and as such the deposition of Andary would not involve disclosure of privileged F.C.C. matters. He argues that Mr. DeMarzo named Mr. Andary as a person who was a witness to his defense. Appellant contends that he is entitled to learn what Mr. Andary knows or has witnessed that supports Mr. DeMarzo's denial of liability in the California case. Finally, appellant argues that Mr. Andary is not a current F.C.C. employee and that the law enforcement and investigative privileges expired when the matter was set for a hearing before the administrative law judge.

## COMPANION LITIGATION

Appellant has expansively availed himself of both legal and administrative avenues in efforts to redress his grievances. He has been a frequent litigant at both the F.C.C. and in federal court.[5] He has brought suits

5. Appellant has litigated access to the F.C.C. investigative records pertaining to him in any number of ways:

He has filed forty-nine Freedom of Information Act ("FOIA") cases, 5 U.S.C. § 552, as a result of which he has received more than 7000 pages of documents from the F.C.C. He has filed several lawsuits in the District Court for the District of Columbia in response to the F.C.C.'s claim of FOIA exemptions 5–7. These law suits resulted in numerous *Vaughn* indices being filed by the F.C.C. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). In these indices, the F.C.C. detailed what documents it had, what exemptions it claimed and the reasons therefore. Appellant was not successful in any of the FOIA enforcement actions. *See, Kay v. F.C.C.*, 867 F.Supp. 11 (D.D.C.1994)—FOIA exemptions upheld. (Richey, J.); *Kay v. F.C.C.*, 976 F.Supp. 23

and claims in apparent preparation for his pending F.C.C. case, in California, Pennsylvania, at the F.C.C. directly, in federal District Court for the District of Columbia, and in the Superior Court of the District of Columbia. He has matters pending appeal to the U.S. Court of Appeals for the District of Columbia Circuit and now here in this court. So far, he has been singularly and uniformly unsuccessful in breaching the wall of privilege that surrounds the pending F.C.C. investigation into his alleged improper business practices that may ultimately cost him more than 150 profitable licenses.

## JURISDICTION

At the outset, appellee contends, but does not strenuously press the argument that the trial court, and in turn this court, is without jurisdiction to entertain this appeal inasmuch as the trial court did not properly have jurisdiction to decide the subpoena enforcement issue.[6] The government argues in its brief that appellant's subpoena is directed at a federal employee and seeks information that the employee learned only in this capacity. Thus, the government argues, the matter is inherently an action against the United States which is protected by sovereign immunity from state court review of its decision to resist the subpoena. Brief of Appellee, p. 20 note 14, citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–69, 71 S.Ct. 416, 95 L.Ed. 417 (1951); *Houston Business Journal v. Office of the Comptroller*, 86 F.3d 1208, 1211–12 & n. 3 (D.C.Cir.1996); *accord Edwards v. Department of Justice*, 43 F.3d 312, 316, 317 & n. 6 (7th Cir.1994); *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir.1989); *Sharon Lease Oil Co. v. F.E.R.C.*, 691 F.Supp. 381, 383 (D.D.C.1988). *See* 47 C.F.R. § 0.463 which prohibits any F.C.C. employee from responding to a subpoena for records or testimony concerning F.C.C. affairs unless expressly authorized to do so by the agency. According to appellee, this enforcement action could only have been brought in federal court.

■ We decline to decide the question whether the trial court had jurisdiction to decide the motion to quash the subpoena. The order at issue in this case was a minimal exercise of jurisdiction as distinguished from an order to enforce the subpoena or to sanction Mr. Andary or compel production of F.C.C. documents. Moreover, appellee's effort to obtain protection from the Superior Court from its own subpoena was in response to appellant's invocation of the jurisdiction of the trial court by service of the subpoena upon Mr. Andary. Superior Court rules permit appellant to do this without prior court authorization.[7] Super. Ct. Civ. R. 45. Appellant therefore issued a command of the Superior Court that, without more, required Mr. Andary to appear at a deposition and to produce certain documents unless he objected and obtained protection from this obligation from the issuing court. Rule 45(c)(3)(A)(iii).

---

(D.D.C.1997)—FOIA exemptions upheld. (Urbina, J.); *Kay v. F.C.C.*, 884 F.Supp. 1 (D.D.C. 1995)—Dismissed for failure to exhaust administrative remedies. (Richey, J.).

Appellant has sued three F.C.C. attorneys who were directly employed by the WTB on the grounds that they had allegedly violated his constitutional rights. *See, Kay v. Hollingsworth, Fishel, Wypijewski*, Civ. No. CV–94–1787 (M.D.Pa.1994). This suit was dismissed by the Chief Judge as a "thinly veiled and frivolous attempt to improperly influence or subvert the pending administrative proceedings." (M.D.Pa., March 31, 1995) at p. 14.

Appellant has also served numerous subpoenas on individuals who were directly involved in the F.C.C. investigation of his own case. These persons included: the same three F.C.C. employees who were sued in Pennsylvania: W. Riley Hollingsworth, Deputy Associate Bureau Chief of WTB, Terry L. Fishel, Chief of the Land Mobile Branch of WTB, and Anne Marie Wypijewski, staff attorney in the Office of Operations of WTB. In an opinion just recently released, after the oral argument in this case, on March 18, 1998, the administrative law judge, Richard L. Sippel, of the F.C.C. granted a motion for a protective order filed by the WTB, shielding the named defendants from appearing at depositions.

6. The government states in its brief that there is "a serious question whether [the local courts] can 'enforce' this subpoena against the federal government." Because we conclude on different grounds that the subpoena cannot be enforced, this jurisdictional issue may well be moot.

7. "In practice, this Rule means that a clerk of court merely issues a blank subpoena to any litigant who wants one." *Davis v. Winfield*, 664 A.2d 836 (D.C.1995).

■ An issue left undecided by this opinion, then, is whether the trial court's order granting the motion to quash is qualitatively any different from one declaring that as an Article I federal court, it lacked jurisdiction over the person of an officer of the federal government. Where, as here, the answer to a jurisdictional issue is "a very complicated one" and where "the merits of the underlying claim [the motion to quash] can easily be resolved," this Court has held that "we do not need to consider the jurisdictional issue." *Stevens v. Quick,* 678 A.2d 28, 31 (D.C.1996). *See also, Norton v. Mathews,* 427 U.S. 524, 532, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) (the Supreme Court declined to resolve "difficult questions of jurisdiction when the case could alternatively be resolved on the merits,") *but see Steel Co. v. Citizens for a Better Environment,* —— U.S. ——, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

## STANDARD OF REVIEW

■ The standard for review of a trial court discovery order is that the order will be disturbed only for an abuse of discretion. *In re Q.D.G.,* 706 A.2d 36 (D.C.1998); *Cotton v. United States,* 388 A.2d 865, 869–70 (D.C. 1978). This occurs "if [the trial court's] actions are clearly unreasonable, arbitrary, or fanciful." *Id.* The trial court has broad discretion to weigh the factors in deciding whether discovery should be compelled.

## LAW ENFORCEMENT PRIVILEGE

■ Appellant clearly cannot prevail in his quest to depose Mr. Andary or to discover law enforcement records pertaining to the ongoing investigation against him. The law enforcement privilege is a qualified privilege recognized at common law that is designed to protect ongoing investigations from premature disclosure, disruption, and compromise. *Black v. Sheraton Corp. of America,* 564 F.2d 531 (D.C.1977). The purpose of the privilege is to protect the confidentiality of sources as well as law enforcement strategies and accumulated evidence. The privilege is a conditional one that must be asserted with particularity by a high official of the law enforcement agency who is both authorized to assert the privilege on behalf of the agency and who is in a position to know that the privilege is necessary. *In re Sealed Case,* 856 F.2d 268 (D.C.Cir.1988). The assertion of the privilege must be formal and delineated. The party claiming the privilege must have "[1] seen and considered the contents of the documents and [2] himself formed the view that on grounds of public interest, they ought not be produced, [3] state with specificity the rationale of the claimed privilege [namely, 3(a) ] specifying which documents or class of documents are privileged and [3(b) ] for what reasons." *Sealed Case, supra,* 856 F.2d at 271; *Friedman v. Bache Halsey Stuart Shields, Inc., et. al.,* 738 F.2d 1336, 1342 (D.C.Cir.1984).

Here, the trial judge recognized that the privilege was properly asserted by the F.C.C. in a formal document captioned "Declaration and Formal Assertion of Privileges of Gary L. Stanford."[8] Mr. Stanford identified himself as the Associate Bureau Chief of the WTB, F.C.C., Gettysburg, Pennsylvania. He asserted that he was a high ranking official of the F.C.C. bureau that was responsible for, and undertook the investigation into the alleged violations by appellant of certain F.C.C. licensing regulations. Moreover, Mr. Stanford averred that he had familiarized himself with the investigation, the ancillary court proceedings, and the various legal privileges asserted here. Mr. Stanford acknowledged that he had been delegated the agency's authority to assert the privileges. Thereafter, as required, Mr. Stanford identified the documents and the areas of testimony that he claimed were privileged, what the specific privilege claims were, and the reasons why the privileges obtained.

■ Once the privilege has been properly claimed, the burden shifts to the party seeking the documents and testimony to demonstrate a need for the materials and the lack of harm that would result from disclosure. *Black, supra,* 564 F.2d at 545; *Friedman, supra,* 738 F.2d at 1341. The court must then balance the public interest in non-

---

**8.** Indeed, appellant does not claim otherwise. The only dispute is whether the trial court properly balanced the harm from disclosure with the expressed need for the information.

disclosure against the need asserted. A list of factors to be considered by the trial judge in conducting this balancing process was identified in *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa., 1973) and has oft been cited since. *Friedman, supra,* 738 F.2d at 1342; *Sealed Case, supra,* 856 F.2d at 272. When weighing the competing interests, the trial court must evaluate:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed: (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the appellant's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the appellant's case.

*Frankenhauser v. Rizzo, supra,* 59 F.R.D. at 344.

The trial judge carefully considered each and every factor appropriate to the analysis. She found that appellant made only a minimal showing of need for the deposition of Mr. Andary. In fact, appellant all but admits that he has no idea what, if anything, Mr. Andary would say in a deposition that would be relevant at all to the California litigation. He relies on no more than a written, but unelaborated response to a single interrogatory that Mr. Andary, among others, might have information pertinent to the defense in the California litigation. Without more, appellant's proffer of need depends entirely on the merits, substance, and legitimacy of the interrogatory

answer. At a minimum, appellant might have inquired further of the California defendant in an effort to establish the need and scope, *ab initio,* of the subpoena that he served upon Andary. The trial judge's conclusion that appellant made a minimal showing of need was clearly not an abuse of her discretion.

On the related issue of harm that might result from the disclosure of information during a deposition of Andary, the trial judge found, as has every other judicial officer who has analyzed the relationship between appellant and the F.C.C., that disclosure of the information sought by the subpoena would interfere with the ongoing F.C.C. proceeding as well as future law enforcement efforts by the agency. The judge concluded further that disclosure would reveal confidential sources, risk witness intimidation and compromise F.C.C. strategy in the current and other proceedings. This conclusion that particularized harm would obtain from a deposition of Andary was likewise supported by the record. The ultimate decision granting the motion to quash appellant's subpoena, therefore, was a careful and reasoned exercise of discretion. Accordingly, the order is affirmed.

*Affirmed.*