Michelle GILES, Appellant,

v.

CRAWFORD EDGEWOOD TRENTON TERRACE, Appellee.

No. 04–CV–1122.

District of Columbia Court of Appeals.

Argued Nov. 1, 2006.

Decided Nov. 30, 2006.

Antonia K. Fasanelli, for appellant.

Jonathan R. Schuman, Bethesda, MD, filed a memorandum in lieu of brief for appellee.

Barbara McDowell and Julie H. Becker, Legal Aid Society of the District of Columbia, and Vytas Vergeer and Rebecca Lindhurst, Bread for the City, filed a brief, amici curiae, supporting appellant.

Before GLICKMAN, KRAMER, and FISHER, Associate Judges.

FISHER, Associate Judge:

Michelle Giles and her landlord entered into a consent order resolving disputes over unpaid rent and needed repairs. When the landlord failed to make the agreed-upon repairs, Ms. Giles moved out of the apartment and sought (by requesting a civil contempt order) to recover the amount of rent she had paid to the landlord since they signed the consent order. She now appeals the decision of the trial court refusing to hold the landlord in civil contempt or to hold a hearing on her motion to show cause. We reverse and remand for further proceedings consistent with this opinion.

I.

On August 14, 2003, appellee Crawford Edgewood Trenton Terrace ("CETT") filed a Complaint for Possession of Real Estate against appellant Michelle Giles in the Landlord and Tenant Branch of the Civil Division of the Superior Court. In addition to possession of the apartment,

CETT sought $454.00 (the value of one month's unpaid rent) and requested that all future rents be paid into the registry of the court until the case was decided. Ms. Giles filed an answer on January 15, 2004, asserting, among other things, a counterclaim and the right to recoupment and set-off. Ms. Giles claimed that CETT was barred from receiving any rent owed because it was violating several sections of the Housing Regulations of the District of Columbia.

After mediating their dispute, the parties signed a consent order on May 6, 2004. Among other things, it required CETT to make listed repairs within thirty days. On June 28, 2004, Superior Court Judge Zoe Bush signed the order, directing appellee to make numerous repairs to the property and releasing $1466.00 to appellee and $577.00 to Ms. Giles from funds deposited in the court registry. The consent order contained the following enforcement provision:

> If Plaintiff [the landlord] fails to comply with the terms of this agreement, Defendant [Ms. Giles] may deposit her monthly rent payments into the registry of the Court upon five (5) days written notice to Plaintiff and the filing of a motion for contempt, provided that Defendant is current in her rent. Upon a hearing on Defendant's motion for contempt, the Court may penalize Plaintiff by awarding Defendant a portion of any rent paid since the execution of the settlement agreement.

On July 19, 2004, after CETT failed to make the required repairs, Ms. Giles filed a Motion to Show Cause as to Why Plaintiff Should Not Be Held in Contempt of Court. On the same date, she vacated her apartment. Superior Court Judge Herbert B. Dixon, Jr., presided over a hearing

on July 29, 2004. At the brief hearing, the court told counsel that it planned to defer considering the motion and give CETT a "date certain" for completing the repairs. Then, after being told that Ms. Giles had moved out of the apartment, the court indicated that it would not hold CETT in civil contempt because there was no longer any need to force compliance with the consent order. The court explained its reasoning at the beginning of the hearing: "The whole purpose of a contempt proceeding is to compel compliance. Not to order compensation. You file your separate action for that." The court denied the motion without prejudice so that Ms. Giles could file a "complaint for compensation" or, in other words, "a separate action to seek compensation from the landlord for any and all damages the landlord may have caused by failing to make the repairs." This appeal followed.

## II.

Ms. Giles argues that the trial court abused its discretion when it based its ruling on a misunderstanding of the law, believing that civil contempt should not be used for compensatory purposes.[1] The Supreme Court has recognized that a trial court may exercise its civil contempt power "for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 448–49, 31 S.Ct. 492, 55 L.Ed. 797 (1911)); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949) ("Civil as distinguished from crimi-

---

1. CETT did not file a brief and did not present oral argument. Instead, it filed a Motion to Excuse Appellee from Appeals Process, explaining that the costs of preparing a brief and presenting oral argument would far exceed the amount in dispute.

nal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.") We likewise have recognized that compensation is an appropriate remedial purpose of civil contempt. *See Bolden v. Bolden,* 376 A.2d 430, 432–33 (D.C.1977) (quoting *McComb); see also Link v. District of Columbia,* 650 A.2d 929, 931 (D.C.1994); *D.D. v. M.T.,* 550 A.2d 37, 43 (D.C.1988).

 The decision to hold a party in civil contempt lies within the sound discretion of the trial court. *In re T.S.,* 829 A.2d 937, 940 (D.C.2003); *Hill v. Bonded Adjustment Ass'n, Inc.,* 398 A.2d 16, 17 (D.C. 1979). *See also In re Bryant,* 542 A.2d 1216, 1220–21 (D.C.1988); *Hackes v. Hackes,* 446 A.2d 396, 400 & n. 6 (D.C. 1982).[2] However, a trial court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law...." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). *See also Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (a court "by definition abuses its discretion when it makes an error of law"); *Ford v. ChartOne, Inc.,* 908 A.2d 72, 84–85 (D.C.2006); *Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979). It seems clear that in denying appellant's motion, the trial court did not appreciate that compensating an aggrieved party is an appropriate remedial objective of civil contempt.[3] The trial court abused its discretion by basing its

determination on a misunderstanding of the law. Therefore, the court erred by failing to hold a hearing on appellant's motion to show cause. *Cf. Moore v. Jones,* 542 A.2d 1253, 1254–55 (D.C.1988) (trial court acted beyond its authority when it refused to vacate a stay of judgment as contemplated by the terms of the consent judgment, effectively modifying the agreement). Accordingly, we reverse and remand to the trial court to hold a hearing on appellant's motion to show cause.

*So ordered.*

---

2. Moreover, the consent order did not use mandatory terms; it provided that the court "may penalize" the landlord after holding a hearing on a motion for contempt. Although it has no effect on our decision, we note that the parties inartfully drafted the consent order when they used the word "penalize." Civil contempt, unlike criminal contempt, is not "designed to punish the contemnor." *In re T.S.,* 829 A.2d 937, 940 (D.C.2003); *D.D. v. M.T.,* 550 A.2d 37, 44 (D.C.1988).

3. Later in the hearing, the trial judge softened somewhat his earlier comments about the purposes of contempt, explaining, "[t]he only reason for the contempt—the primary reason—I won't say only[,] [t]he primary reason for the contempt action in court is to compel compliance. And she's vacated." These revised comments do not give us sufficient assurance that the law was applied correctly.